```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF TENNESSEE
                     WESTERN DIVISION
_____

UNITED STATES OF AMERICA,        )
                                 )
    Plaintiff,                   )
                                 )
v.                               )   No. 23-cr-20082-MSN-tmp
                                 )
KHAMRON A. ROBERTS,              )
                                 )
    Defendant.                   )
_____

                   REPORT AND RECOMMENDATION
_____
```

Before the court by order of reference is defendant Khamron Roberts's Motion to Suppress, filed on August 25, 2023. (ECF No. 21.) This motion was referred to the undersigned magistrate judge on August 25, 2023. (ECF No. 22.) The government responded on September 14, 2023. (ECF No. 27.) The parties appeared before the undersigned for a suppression hearing on November 2, 2023. (ECF No. 32.) For the reasons below, the undersigned recommends that the motion be denied.

## I. PROPOSED FINDINGS OF FACT

The following proposed findings of fact are based on the evidence presented at the November 2 suppression hearing. The evidence included the testimony of Tennessee Department of Corrections Special Agent Madison Futrell, Shelby County Sheriff's Office Deputy Justin Bishof, Fayette County Sheriff's Office

Lieutenant Michael Pittman, and Shelby County Sheriff's Office Detective Joshua Fox, a Shelby County Sheriff's Report Narrative, and the search warrant and photographs of the vehicle and firearm at issue. The undersigned finds the testimony of the four officers credible and adopts their version of the events as the proposed findings of fact.

Khamron Roberts was wanted by the Desoto County Sheriff's Office in Mississippi for escape. (Tr. p. 10.) A "Deputy Thornton" from Northern Mississippi sent a request to the U.S. Marshal's Two Rivers Violent Fugitive Task Force for assistance locating and apprehending Roberts because they had reason to believe he was in Memphis, Tennessee. (Id.) Deputy Thornton explained to Special Agent Futrell that, after interviewing the person understood to be Roberts's girlfriend, he believed Roberts would be hiding in her Memphis apartment. (Id.) Deputy Thornton also sent several photos and videos from Roberts's public Instagram social media account to help identify him. (Id. at 11.) In the videos, Special Agent Futrell noticed Roberts holding a Glock handgun with an automatic switch and a gold threaded barrel. (Id. at 11–12.) Special Agent Futrell testified that the gold threaded barrel is a modification that allows the user to attach a suppressor to the barrel. (Id. at 13.) He also testified that the switch allows the weapon to be converted from semi-automatic to fully automatic. (Id. at 14.)

On June 28, 2022, Special Agent Futrell and Lieutenant Pittman surveilled the apartment complex where Roberts was believed to be staying and saw a green Honda Accord enter the parking lot. (Id. at 32, 81.) A man stepped out and walked toward the apartment complex wearing pink shorts and a black shirt. (Id.) Special Agent Futrell told Lieutenant Pittman to stand by and called Detective Fox to the scene. (Id. at 34.) The man in pink shorts came back outside and walked toward the car, at which time Detective Fox identified him as Khamron Roberts. (Id. at 34, 92-93.) After Roberts reentered the car and then went back to the apartment, Special Agent Futrell initiated the take down protocol. (Id. at 34-35, 94.) Around ten to twelve officers, including Deputy Bishof, arrived at the scene. (Id. at 36, 54, 91.) While some surrounded the building, several others went to the door of the apartment, initiated a knock-and-talk, and then took Roberts into custody. (Id. at 54-55.) Roberts was handcuffed and brought out of the complex. (Id. at 95-96.) After running a National Crime Information Center check to confirm the Mississippi warrant, Special Agent Futrell took custody of Roberts. (Id. at 19, 96.)

Special Agent Futrell walked Roberts over to the Shelby County Fugitive Apprehension Team's vehicles. (Id. at 19.) They passed the green Honda Accord, which had the driver's side window down. (Id. at 19-20.) Special Agent Futrell testified that he peered into the car and could see a Glock with a switch visible under the

driver's seat in plain view. (Id. at 20.) He testified that he immediately recognized it as the gun he had seen Roberts holding in his Instagram videos. (Id. at 25.) Both Detective Fox and Deputy Bishof also testified that they saw the gun through the driver's window in plain view. (Id. at 26, 55-56.) The officers testified that they decided to get a search warrant for the car "because we thought there could be more with the threaded barrel. We figured that . . . there was a possibility that it could be a suppressor somewhere in the vehicle. More ammunition more magazines and more evidence for other crimes outside of just the pistol itself." (Id. at 26.) The officers testified they knew they could seize the gun because it was in plain view, but insisted they chose to wait to get the signed warrant so that they could proceed to search the rest of the car. (Id. at 46, 98.)

The officers agreed to have Deputy Bishof get the search warrant because he had access to "Liquid Office," a program that allowed him to submit and sign the warrant online. (Id. at 27, 58-59, 98.) This was the first time he had ever done a search warrant to search for evidence, although he estimates having done "at least" ten to fifteen search warrants to locate fugitives. (Id. at 59, 63-64.) In his affidavit accompanying the warrant to search the green Honda Accord, Deputy Bishof made no mention of the gun seen through the window of the car. (Ex. No. 6.) The affidavit stated, in its entirety:

- 4 -

> Affiant has On June 28,2022 around 11:20hrs.Deputies with the U.S. Marshal's Two Rivers Violant Fugitive Taskforce and Detective's with the Shelby County Sheriff's Fugitive Apprehension Team where doing surveillance at 1476 Parkway View Apt 201, looking for a fugitive from justice out of Mississippi, Khamron Roberts DOB: [redacted]/1998 wanted for escape with original charges of Aggravated Robbery. While doing surveillance on the address Detective Fox observed the fugitive exit the above said address and enter the front driver side of an 2009 Honda Accord green in color MS tag MTB1396, Detective Fox observed the fugitive leave and come back to the honda accord twice and re-enter the above said address. It was relayed to Deputies and Detective from the Mississippi agency that Khamron Roberts DOB [redacted]/1998 was known to always have a handgun on him. Detective's are requesting a sereach warrant for the 2009 Honda Accord displaying MS tag MTB1396, it is believed the fugitive stashed a weapon in the said vehicle prior to his apprehension. This search is requested within Shelby County, Tennessee.

(Id. (errors in original).)[1] As the officers waited for the warrant to be signed by a judicial officer, Detective Fox took several photographs of the gun in the car, including one that required him to reach through the window. (Tr. pp. 99–103.) After the warrant was signed, Special Agent Futrell searched the car, retrieved the gun, and found a "big clear baggy filled with a green, leafy substance" that the officers assumed was marijuana. (Id. at 28–29.)

After the search, Roberts remained in the back of a police vehicle at the scene. (Id. at 116.) Special Agent Futrell told

---

[1] The government concedes "that there is some information that is missing from the affidavit in support of the search warrant." (Tr. p. 7.)

- 5 -

Roberts that they had found the gun and the marijuana in his car.[2] (Id.) He testified that after explaining what they had found, he told Roberts "I've just got to read you [Miranda rights] before some questions." (Id. at 117.) But before Special Agent Futrell had time to read Roberts his Miranda rights, Roberts insisted that everything in the vehicle was his. (Id.) Special Agent Futrell then read Roberts his Miranda rights and, afterward, Roberts refused to talk any further. (Id.)

Roberts filed his Motion to Suppress on August 25, 2023. (ECF No. 21.) He asks that this court suppress the weapon found in the search because, as he argues, the gun was not in plain view and the warrant was not supported by probable cause. (ECF No. 21 at PageID 27–28.) Specifically, he claims that, had the gun in fact been seen under the seat, the officers would logically have included that information in the search warrant instead of merely asserting that Roberts "was known to always have a handgun on him." (Tr. p. 4; Ex. No. 6.) Deputy Bishof testified that this omission was an inadvertent mistake on his part, which the undersigned finds credible. (Tr. p. 60.) The undersigned also finds credible the testimony of the officers and therefore finds that the gun was plainly visible from outside the car. Further, based on the

---

[2] The government did not charge Roberts in connection with the marijuana found in the search of the green Honda Accord. (Tr. p. 123.)

- 6 -

photograph taken by Detective Fox prior to the warrant's execution (Ex. No. 3), coupled with testimony from the officers, the undersigned finds that the illegal switch was also plainly visible from outside the car.

## II.   PROPOSED CONCLUSIONS OF LAW

**A. Plain View**

Roberts argues that the gun was not in plain view and thus the resulting seizure violated his Fourth Amendment rights. Under the plain view exception to the warrant requirement, officers may seize evidence if it is "(1) in plain view; (2) of a character that is immediately incriminating; (3) viewed by an officer lawfully located in a place from where the object can be seen; and (4) seized by an officer who has a lawful right of access to the object itself." United States v. Roark, 36 F.3d 14, 18 (6th Cir. 1994) (citing Horton v. California, 496 U.S. 128 (1990)). Additionally, the automobile exception to the warrant requirement allows officers lawful right of access to the interior of a locked car to seize evidence of a crime visible in plain view. United States v. Galaviz, 645 F.3d 347, 357 (6th Cir. 2011) (citing United States v. Smith, 510 F.3d 641, 647 (6th Cir. 2007)) ("The automobile exception allows a warrantless search of an automobile if officers have probable cause to believe the vehicle contains evidence of a crime."). "There is no legitimate expectation of privacy shielding that portion of the interior of an automobile

which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." United States v. Cantie, 839 F. App'x 998, 1001 (6th Cir. 2021) (quoting Texas v. Brown, 460 U.S. 730, 740 (1983)).

Here, the undersigned finds that the gun was in plain view — visible under the driver's seat through the open window of the car. Regardless of whether the gold barrel was visible under the seat, the illegal switch could be seen, thus making the gun's immediately incriminating nature apparent. Moreover, the officers knew Roberts was a convicted felon and thus was prohibited from possessing the firearm. Standing outside the car while walking Roberts to a police vehicle, Special Agent Futrell was permitted to be where he was when he looked inside the green Honda Accord. Finally, the officers were lawfully allowed to seize the gun under the automobile exception. Thus, even if the warrant was deficient — which the undersigned need not address — the seizure of the gun did not violate Roberts's Fourth Amendment rights.

**B.   Roberts's Statement to Officer Futrell**

Roberts also seeks to suppress his statement to Officer Futrell, not based on an alleged Miranda violation, but instead because it was fruit of the allegedly defective warrant. (ECF No. 21 at PageID 29–30.) The fruit of the poisonous tree doctrine bars introduction of derivative evidence that is the product of the primary illegally obtained evidence or testimony. See United

States v. Alexander, 540 F.3d 494, 501 (6th Cir. 2008). In order "to determine whether evidence should be excluded as fruit of the poisonous tree, we ask whether the evidence 'has been come at by exploitation of [the underlying] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" United States v. Elmore, 18 F.4th 193, 199 (6th Cir. 2021) (quoting Wong Sun v. United States, 371 U.S. 471, 488 (1963)) (alterations in original). Roberts was lawfully detained and, as the undersigned previously stated, police could lawfully access the gun without a warrant. Therefore, even if the warrant was not supported by probable cause, Roberts's spontaneous utterance after being told what officers found in the car was not the fruit of any unlawful conduct by the officers.

### III. RECOMMENDATION

For the reasons above, it is recommended that Roberts's Motion to Suppress be denied.

Respectfully submitted,

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

November 15, 2023
Date

### NOTICE

**NOTICE WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND**

**RECOMMENDATIONS. ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**